**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**


-------------------------------------------------------x

IN RE RUSLAN ASSIMOV                          **Misc. Action**

REQUEST FOR DISCOVERY PURSUANT          **CASE NO: 20-_____**
TO 28 U.S.C. § 1782.


-------------------------------------------------------x


## <u>VERIFIED APPLICATION AND INCORPORATED MEMORANDUM OF LAW BY RUSLAN ASSIMOV FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782</u>

### <u>VERIFIED APPLICATION</u>

The Applicant, Ruslan Assimov ("Assimov" or "Applicant"), by and through undersigned counsel and pursuant to 28 U.S.C. § 1782, applies for an Order granting Applicant leave to serve, for use in closely contemplated foreign proceedings, subpoenas for production of documents and for testimony, on the following companies found in this District: Andritz Hydro Corp. and Andritz (USA) Inc. (collectively, the "Discovery Respondents").   In support of such request, the Applicant states as follows:

1.     Pursuant to 28 U.S.C. § 1782 ("Section 1782"), and on information and belief as to matters set forth herein not particularly knowable to Applicant, Applicant seeks an order from this Court authorizing issuance and service of

1

subpoenas on the Discovery Respondents for the production of documents, records and electronically stored information ("ESI") concerning services which were provided by Assimov to Andritz Hydro GmbH (of Germany) and Andritz Hydro GmbH (of Austria) ("Andritz Germany" and "Andritz Austria" respectively) (collectively, the "European Andritz Entities").  Such discovery would be for use in reasonably contemplated civil proceedings in Germany and/or Austria.

2.     Applicant has previously sought, by way of a letter dated April 28, 2020, voluntary cooperation in whole or part from the Discovery Respondents with respect to provision of the materials and information covered by this Application. However, such request went unanswered by the Discovery Respondents.

3.     Applicant further reserves all rights which Applicant may have to seek voluntary or compulsory discovery from other individuals, entities or organizations for use in foreign proceedings against Andritz Germany and/or Andritz Austria.

4.     A proposed order is annexed hereto as Exhibit A, and a proposed subpoena is attached as Appendix 1 to Exhibit A.  Upon information and belief, the Discovery Respondents have possession, custody or control of such materials and information sought therein.

5.     As is more fully set forth in the proposed subpoenas, in addition to deposition testimony following documentary production, the categories of documents which Applicant seeks production of (and with a full reservation of rights

to seek further documents and information as may become apparent) include the following:

    a. All documents, including communications, concerning the contract awarded to the European Andritz Entities for the rehabilitation of the Nurek Hydro Power Plant in Tajikistan (the "Nurek Project").

    b. All documents, including communications, concerning the entity, joint venture or other business association referred to as "Andritz JV Corp. (USA) Andritz Hydro" by the World Bank[1] in connection with the public announcement of the contract award for the Nurek Hydro Power Plant.

    c. Documents sufficient to identify the full legal name, state (or country) of establishment, entity form, owners / shareholders / members, CEO, president, CFO, COO, general counsel, chief compliance officer, and chairman of the board of the aforementioned business referred to by the World Bank as being Andritz JV Corp. (USA).

---

[1] As described by the World Bank, "The design, supply, and installation contract for both Phases I and II of power plant rehabilitation was awarded to JV of Andritz Hydro GmbH (Germany), Andritz Hydro GmbH (Austria), and Andritz JV Corp. (USA) [and] was signed on July 12, 2018. The contract price for both Phases is €239,099,867.00 and TJS98,128,050.0." http://documents.worldbank.org/curated/en/355941542656093499/pdf/Disclosable -Version-of-the-ISR-Nurek-Hydropower-Rehabilitation-Project-Phase-I-P150816- Sequence-No-03.pdf

d. All documents, including communications, concerning how the European Andritz entities perceived the nature of their contractual or quasi-contractual relationship or consultancy engagement with Assimov.

e. All documents, including communications, concerning assistance, advice or other services provided by Assimov to the European Andritz Entities with respect to negotiating/bidding in connection with seeking an award of the contract for the Nurek Project or other assistance relating to that project.

f. All documents, including communications, concerning meetings arranged by Assimov for the European Andritz Entities in Tajikistan or with Tajik business or political persons.

g. All documents, including communications, concerning tax advice or assistance provided by Assimov to the European Andritz Entities in connection with Tajikistan.

h. All documents, including communications, concerning the European Andritz Entities and payments, commissions or any other form of compensation which might be owed to Assimov in connection with negotiating/bidding in connection with seeking an award of a contract

for the Nurek Project or other assistance relating to arrangements for that project.

i.  All documents, including communications, concerning information or data provided to the European Andritz Entities relating to bids made, or rate sheets submitted, as proposals for rehabilitation of the Toktogul Hydro Power Plant in Kyrgyzstan (the "Toktogul Project") by entities with names containing the words or phrases: General Electric; GE Renewable Energy; Alstom; Alstom Hydro France; Alstom Renewables (Switzerland); Voith; or DEC-DFEM-SM Consortium.

j.  All documents, including communications, concerning the receipt, dissemination, processing or analysis by the European Andritz Entities of information or data provided to the European Andritz Entities relating to bids made, or rate sheets submitted, as proposals for rehabilitation of the Toktogul Project by entities with names containing the words or phrases: General Electric; GE Renewable Energy; Alstom; Alstom Hydro France; Alstom Renewables (Switzerland); Voith; or DEC-DFEM-SM Consortium.

k.  All documents, including communications, concerning amounts, projections, estimates, calculations, historical figures or other data

pertaining to the analysis of bid(s) to make, or then being made, in connection with pursuit of the Nurek Project.

l. All documents, including communications, concerning communications with Wolfgang Thoma (whether as an employee of Andritz Germany or in any other capacity) concerning the Nurek Project or the Toktogul Project or negotiating/bidding in connection with seeking an award of a contract for the Nurek Project or about or relating to Assimov.

m. All documents, including communications, concerning communications with Aleksey Pechenkyn (whether as an employee of Andritz Germany or in any other capacity) concerning the Nurek Project or the Toktogul Project or negotiating/bidding in connection with seeking an award of a contract for the Nurek Project or about or relating to Assimov.

n. Documents sufficient to identify the agreed upon percentage rate or other compensation basis for consultancy services provided by consultants assisting the Andritz European Entities (or their direct/indirect parents, subsidiaries or affiliates) in successful or failed bids for similar project awards (i.e. rehabilitation of hydro power plants) anywhere in the world since January 1, 2015.

## JURISDICTION AND VENUE

6.     Jurisdiction is proper pursuant to 28 U.S.C. § 1782 as this Application is for discovery involving persons that are found and documents located within this District, and the discovery is relevant and important to assist in foreign proceedings which Assimov reasonably contemplates commencing.

7.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1782 because the discovery is being sought from corporations or companies found in this judicial district.

## BACKGROUND CONSIDERATIONS

**Parties and Relevant Persons**

8.     Assimov is an individual citizen of Kazakhstan who has worked in consulting and the construction business in Kazakhstan and Central Asia. He has, at varying times, been affiliated with entities, including Khozu Stroyinvest LLP ("Khozu") and Simwol-A LLP ("Simwol").

9.     Andritz Germany and Andritz Austria are, on information and belief, German and Austrian entities with their principal places of business in Ravensburg, Germany and Vienna, Austria, respectively. Andritz Germany and Andritz Austria are part of the Andritz Group, a conglomerate offering products and services for a range of industries, including the hydro power industry.

10.     On information and belief, the Discovery Respondents are US-based affiliates of Andritz Germany and Andritz Austria.  Andritz (USA) Inc. is a business entity originally established under the laws of Delaware which converted into being a Georgia entity and which maintains its principal place of business in Alpharetta, Georgia.  Andritz Hydro Corp. is a business entity established under the laws of North Carolina which, on information and belief, also maintains a place of business in this District.  According to information available from the North Carolina, Secretary of State's database, three of the seven listed officers for Andritz Hydro Corp. have business addresses in Alpharetta, Georgia; according to the Georgia Secretary of State's database, the company's CEO is located at a business address in Alpharetta, Georgia.  According to corporate disclosure-related statements filed in other federal proceedings, Andritz Hydro Corp. is a wholly-owned subsidiary of Andritz (USA) Inc., a privately-owned company, which in turn is wholly-owned by Andritz AG, a publicly-held Austrian company.

**Background Dealings Amongst Khozu, Assimov and the European Andritz Entities**

**The Shardarinskaya Project**

11.     As reported on the Andritz Group website, "[i]n December 2013 Andritz Hydro signed a contract with JSC 'Shardarinskaya HPP', subsidiary of the state-owned   Kazakh   utility   company   Samruk   Energy,   to   upgrade   the

electromechanical equipment at the Shardarinskaya hydropower plant, which was originally commissioned in 1967."  The project was financed by the European Bank for Reconstruction and Development.  As observed by the Andritz Group's release at the time, local cooperation and efficiency were critical for success going forward with the Shardarinskaya hydropower plant project (the "Shardarinskaya Project"). "This [was] the first major contract in Central Asia … for Andritz Hydro."  "The challenge for Andritz Hydro [going forward would] be to implement an efficient local set up within a short period of time … [The project would though] help clients and business partners in the [Central Asian] region to recognize the reliability of the Andritz Hydro equipment and services."      https://www.andritz.com/hydro-en/hydronews/25/hy-news-25-14-shardarinskaya-hydro

12.     In connection with the Shardarinskaya Project, Andritz Germany sub-contracted with an entity called Khozu on February 9, 2015.  That marked the start of close cooperation between the European Andritz Entities and Assimov, CEO of Khozu at the time, as the European Andritz Entities sought to establish their commercial presence in the Central Asian region.

**The Toktogul Project**

13.     Collaboration expanded during 2016 when the European Andritz Entities intended to bid for a project for the overhaul rehabilitation of the Toktogul hydropower plant in Kyrgyzstan (the "Toktogul Project").  The European Andritz

Entities lacked sufficient experience and business contacts in Kyrgyzstan to successfully apply on an independent basis. They needed a reliable, local partner with whom to consult.

14.     The European Andritz Entities recognized that Assimov and his business could deliver such reliable regional support and sought further cooperation. However, due to the ongoing sub-contract with Khozu for the Shardarinskaya Project, Andritz Germany was reluctant to directly contract with Khozu for the consultancy services. Therefore, a new company, Simwol was established with Assimov as the sole participant / shareholder. Then, on or about December 23, 2016, Andritz Austria and Simwol entered into a consultancy agreement for the purposes of establishing and maintaining business contacts in Kyrgyzstan, supporting the Toktogul Project bidding process, and offering negotiation related guidance, insight and assistance.

15.     Further, on December 20, 2017, a Letter of Authorization was issued in the name of Assimov based on which Assimov was duly authorized to act as a representative of Andritz Austria with regard to Toktogul Project. The Letter of Authorization is annexed hereto as Exhibit B.

16.     Ultimately, the resulting efforts to conclude a contract award for the Toktogul Project did not succeed. On or about February 9, 2018, the Asian Development Bank announced the award of that project to "a joint venture of GE

Hydro       (France)       and       GE       Renewables       (Switzerland)."

https://www.adb.org/news/adb-supported-kyrgyz-republics-largest-hydropower-

plant-achieves-key-milestone.

**The Nurek Project**

17.    Concurrently with, or not long after, Andritz Austria entered into its

consultancy agreement with Simwol (with Assimov as the sole shareholder), it

became known that there would be a tender in Tajikistan for the overhaul

rehabilitation of the Nurek Hydro Power Plant (i.e. Nurek Project).

18.    The European Andritz Entities did not enter a separate, new

consultancy agreement with Simwol, Assimov or Khozu.  However, the European

Andritz Entities began to work with Assimov in connection with seeking a contract

award for the Nurek Project.  They were ultimately successful and that was due, in

large part, to services provided by Assimov to the European Andritz Entities.

19.    Assimov provided extensive, beneficial consultancy services to the

European Andritz Entities in connection with their efforts to successfully participate

in the tender for the Nurek Project.  Throughout, the European Andritz Entities knew

that those consultancy services were not being provided on a voluntary basis but,

instead, for remuneration.

20.    The European Andritz Entities succeeded in their bidding and were

awarded the contract, financed by the Asian Infrastructure Investment Bank, the

World Bank (IDA and IBRD) and the Eurasian Development Bank. As described by the World Bank, "The design, supply, and installation contract for both Phases I and II of power plant rehabilitation was awarded to JV of Andritz Hydro GmbH (Germany), Andritz Hydro GmbH (Austria), and Andritz JV Corp. (USA) [and] was signed on July 12, 2018. The contract price for both Phases is €239,099,867.00 and TJS98,128,050.0."

http://documents.worldbank.org/curated/en/355941542656093499/pdf/Disclosable-Version-of-the-ISR-Nurek-Hydropower-Rehabilitation-Project-Phase-I-P150816-Sequence-No-03.pdf

21.     As indicated above, the Nurek Project was awarded, not only to Andritz Germany and Andritz Austria, but also to "Andritz JV Corp. (USA) Andritz Hydro." The inclusion of a US-based company in the project award is consistent with the Applicant's informed understanding that, at the time of bidding, the European Andritz Entities believed they likely needed a US-based co-bidder to secure the award.

22.     To date, the Applicant has not been able to locate corporate registry information detailing the organizational information for "Andritz JV Corp. (USA) Andritz Hydro."   However, it is abundantly reasonable that the Discovery Respondents, as organizationally top-level entities for the Andritz Group's US-

related hydro business, would have possession, custody or control of that information.

23.     Given the involvement of a US Andritz venture in the project award, it is equally anticipated that the Discovery Respondents would have documents and information concerning: (a) the European Andritz Entities' mutual understanding, or meeting of the minds, regarding the remuneration basis upon which the Applicant provided services to the European Andritz Entities in connection with bidding and negotiating for the Nurek Project; and (b) the European Andritz Entities' strategy to take beneficial services but withhold due compensation for the same.

**Services in Connection with Bidding and Negotiating for the Nurek Project**

24.     In connection with the European Andritz Entities' successful bidding for the Nurek Project, the Applicant provided the following services:

a.   As Applicant had done during the Toktugul Project, Applicant established business contacts and arranged meetings for the European Andritz Entities. One meeting was held on or about May 10, 2018, between representatives of the European Andritz entities, namely Guiseppe Catalfamo, Wolfgang Thoma and Alexey Pechenkin, and Jurabek Nurmakhmadov, former Tajik Secretary of Energy, who had been one of the initiators of the Nurek Project (and who also maintained

close ties to the political leadership of that country). This meeting was used to discuss cooperation regarding the Nurek Project as well as to obtain advice in tax matters;

b.  Assimov established contact with Mr. Shodmon Khushov, a Chief Engineer of BarqiTojik (national energy company of Tajikistan), who at that time had very close ties to the political establishment of Tajikistan, and who was also a shareholder of Energoremont, a privately owned Tajikistan-based company engaged in the energy business, to discuss possible collaboration on the Nurek Project.  This led to the signing of a May 15, 2018 letter of intent for cooperation on the Nurek Project between Khozu and Energoremont.  This further led to a joint visit to the Nurek Hydro Power Plant by representatives of the European Andritz Entities, namely Nobert Schwartz, Giuseppe Catalfamo and Wolfgang Thoma, together with Mr. Shodmon Khushov;

c.  In May 2018, Assimov also met with Mr. Ibaidullo, the Head of Project Management Unit for all rehabilitation projects at BarqiTojik, who was also overseeing, essentially, on behalf of the Tajik government, the process for tendering the Nurek Project;

d.   Assimov established contacts with certain other governmental officials of Tajikistan, including, among others, officials within the Ministry of Energy, City Administration of Dushanbe (capital city of Tajikistan) and others, for the purposes of securing Andritz interests and opportunities in the tender for Nurek Project;

e.   Further, in connection with these and other meetings, Assimov laid extensive groundwork to introduce the European Andritz Entities to the Tajik market (inclusive of many very influential persons across industrial, economic, energy and/or socio-political sectors) which was critical to the latter's ability to successfully secure the contract for the Nurek Project;

f.   Assimov likewise addressed certain Tajik tax considerations for the European Andritz Entities who sought clarity regarding what entities in the contracting chain would be VAT exempt.  Tax related service was provided on the express request of Giuseppe Catalfamo, from Andritz Germany, who specifically noted, in a July 9, 2018 email to Assimov, that "the tax issue is of very [sic] importance and has to be solved … As responsible person I have asked Wolfgang to go on touch with you, as soon, he can do and clarify issues, further tasks and modes of communication with you and others.";

g. In or about October 2017, the European Andritz Entities were also provided with certain detailed tender documents made by several applicants for the Toktogul Project. This included detailed price breakdowns for individual components by business lines of General Electric, Alstom, the Chinese consortium DEC-DFEN-SM, SinoHydro and Voith Hydro. Assimov understood that this information was key for the European Andritz Entities' efforts to succeed in connection with their proposal for the Nurek Project;

h. Tranches of documents were sent on October 2, 2017 and October 16, 2017; AND

i. On October 4, 2017, Wolfgang Thoma (employee of Andritz Germany) wrote to Assimov with an analysis relating to other bidders' submissions. It is clear that competitive insight, data and assistance provided by Assimov for the European Andritz Entities was critical to their success with the Nurek Project.

25. Ultimately and as aforesaid, the European Andritz Entities prevailed in obtaining the contract award and the resulting contract was made on or about July 12, 2018.

26. Nonetheless, the European Andritz Entities have refused to provide due compensation for the consultancy services which they received and which were

critical to their success in obtaining the award for the Nurek Project. To the contrary, they have contended that they never reached any agreement for compensation even though the services were clearly utilized.

27.    While Khozu separately entered into a letter of intent dated April 5, 2018 to provide sub-contractor services in connection with the Nurek Project (as to which the commercial relationship eventually, in any event, broke down and never came to fruition), those sub-contractor services for performance of the Nurek Project were commercially distinct, akin to the subcontracting by Khozu in the Shardarinskaya Project, and for separate remuneration. Whereas, the consultancy services related to obtaining the award of the Nurek Project (that were rendered but uncompensated) were substantially similar to services provided during the bidding process for the Toktogul Project.

28.    On information and belief, Applicant is informed that the European Andritz Entities compensate consultants, which successfully help bring project awards to fruition through local insight and contacts, with remuneration in the range of 4% of a given project's total contract value.

29.    In light of the foregoing, Applicant reasonably contemplates bringing legal claims against the European Andritz Entities in a European forum (likely Austria) to recover amounts due to him for the services successfully provided to the Andritz European Entities in connection with them being awarded the Nurek Project

which is worth hundreds of millions of dollars.  Whether those claims would lie, from an American perspective, in contract or quasi contract, the position would be that the European Andritz Entities should not be allowed to retain the full benefit of the contract for the Nurek Project without justly compensating Applicant for Applicant's contribution to that endeavor having been awarded to the European Andritz Entities.

30.    For all the foregoing reasons, together with the legal position set forth in the incorporated memorandum of law which follows, the Applicant respectfully submits that his request to take discovery pursuant to 28 U.S.C. § 1782 should be granted.

## INCORPORATED MEMORANDUM OF LAW

## 28 U.S.C. Section 1782

Section 1782 "'is the product of congressional efforts, over the span of [more than] 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals.'" *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269-70 (11th Cir. 2014) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004)). 28 U.S.C. § 1782 provides that:

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the

document or thing produced, in accordance with the Federal Rules of Civil Procedure.

(b) This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.

In its current form, Section 1782 incorporates multiple amendments which Congress has made over the years including amendments by which it:

(a)    Deleted prior text which had limited Section 1782 relief to aid for use in foreign "judicial proceedings[s]" and replaced that restrictive language with much broader text covering "'proceeding[s] in a foreign or international tribunal' in order to ensure that assistance was not confined to proceedings before conventional courts, but rather extended to administrative and quasi-judicial proceedings." *Consorcio Ecuatoriano*, 747 F.3d at 1269; AND

(b)    Deleted the statute's prior use of the word "pending." *Id.* at 1270.

Thus, "[i]n its present form, section 1782 has four prima facie requirements that must be met before a district court is authorized to grant an application for discovery under the statute." *Id.* First, the request must be made by a foreign or international tribunal or by "any interested person." Second, the request must seek documentary or testimonial evidence. Third, the evidence sought needs to be for use in a proceeding before a foreign or international tribunal. Fourth, the person from whom such discovery is sought must reside or be found within the federal district

wherein the order is entered. *Id.* (citing *In re Clerici,* 481 F.3d 1324, 1331 (11th Cir.2007)).

Regarding the first requirement, there is no question that Applicant is an interested person with respect to the proceedings they contemplate bringing against the European Andritz Entities.  The Supreme Court has expansively construed Section 1782's reference to "any interested person" as including all those who have a "reasonable interest" in obtaining the judicial assistance.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004) (rejecting an argument "that the catalog of 'interested person[s]' authorized to apply for judicial assistance under § 1782 includes only 'litigants, foreign sovereigns, and the designated agents of those sovereigns.'").  Here, the Applicant is the person who intends to bring the proceedings in Europe and would, as such, fall within the scope of litigants.

Regarding the second requirement, the Applicant unquestionably seeks to obtain evidence.  Assimov previously served a demand letter on the European Andritz Entities who responded, via counsel, with a letter which, while acknowledging that requests for information were made, rejected that an agreement for remuneration was made.  The Applicant therefore anticipates that, in the contemplated European proceedings, he will need to rely upon all available evidence regarding: (a) the European Andritz Entities' true understanding of their relationship with the Applicant; (b) the quantum of consideration typically paid by the European

Andritz Entities (and/or affiliates) to consultants providing similar services; and (c) the extent of benefit received and retained by the European Andritz Entities for services provided in connection with the Nurek Project.

Regarding the third requirement, the information gathered will also be for use in proceedings before a foreign tribunal.  Foreign proceedings need not be currently pending.  They only need to be "reasonably contemplated." *Consorcio Ecuatoriano*, 747 F.3d at 1270 (quoting *Intel Corp. v. Advanced Micro Devices*, *Inc.*, 542 U.S. 241, 258 (2004)); *see also Mees v. Buiter*, 793 F.3d 291 (2d Cit. 2015) (a foreign proceeding need not be pending so long as it is within "reasonable contemplation"). It should also be noted that "use" of evidence is not synonymous with admissibility. *Glock v. Glock Inc.*, 797 F.3d 1002 (11th Cir. 2015) ("A party may *use* evidence— whether or not it is *admissible* in court under the Federal Rules of Evidence—to develop a theory of the case, to prepare a complaint, to lead it to admissible evidence, to help it to settle a case, and to accomplish other aspects of prosecuting or defending a case. That fact, however, does not mean that the court will *admit* the evidence or even that the evidence is potentially admissible.")  Here, the Applicant seeks discovery of evidence for use in fully preparing – and thereafter pursuing – the claim statement or complaint which he contemplates filing overseas.  The third requirement is thus satisfied.

Lastly, with regard to the fourth requirement, each of the Discovery Respondents from whom discovery is sought is found within this District. As set forth above, both Andritz (USA) Inc. and Andritz Hydro Corp. can be found within the Northern District of Georgia.

In addition to satisfying each of the four prerequisites for issuance of a Section 1782 order, all discretionary factors bearing on the Court's consideration of whether to grant discovery strongly militate in favor of discovery. Those discretionary factors, commonly referred to as the "*Intel* factors" were set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241.

> 1782  The *Intel* factors look to:
>
> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." *Id.* at 264–65, 124 S.Ct. at 2483.

*In re Clerici*, 481 F.3d 1324, 1334 (11th Cir. 2007).

Each *Intel* factor weighs in favor of the discovery. First, none of the Discovery Respondents would be parties to the foreign proceedings. The corporate affiliation between the Discovery Respondents and the European Andritz Entities is

immaterial to this analysis. *See In re Matrix Holding Limited*, 18-Misc. 465, 2019 WL 6497757, *5 (S.D.N.Y. Dec. 2, 2019) (citing *In re del Valle Ruiz*, 939 F.3d 520, 523 (2d Cir. 2019), for the proposition that "Parent companies who are 'participants' to foreign proceedings are considered separate legal entities from their subsidiaries and affiliates for purpose of Section 1782 motions.").

Second, there is no reason to doubt that a foreign tribunal would not be receptive to the provision of information through this Section 1782 proceeding. Indeed, courts look for "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *In re. Kreke Immobilien KG*, 2013 WL 5966916, *5 (S.D.N.Y. Nov. 8, 2013) (quoting *In re Euromepa S.A.,* 51 F.3d 1095, 1100 (2d Cir.1995)). No such evidence, let alone authoritative evidence, applies here.

Third, the Applicant is not attempting to circumvent any foreign proof gathering restrictions or other policies, be they foreign or domestic. They are merely attempting to gather relevant information for use in preparing and prosecuting their claims.

It should also be noted that Applicant has not sought similar relief pursuant to 28 U.S.C. § 1782 prior to this application other than the aforementioned request for voluntary provision of documents which went unanswered.

**WHEREFORE**, Applicant prays for the Court to issue an order:

(A)     Granting Applicant's Application;

(B)     Ordering that the Discovery Respondents shall make available to Applicant all documents responsive to the categories of documents enumerated in Applicant's proposed subpoena, within twenty (20) days of service of such order on the respective Discovery Respondent or at such other time as may be agreed;

(C)     Appointing attorneys Mathew G. Nasrallah and Edward W. Floyd as examiners to: (i) obtain the requested documents and information; (ii) issue subpoenas to the Discovery Respondents to obtain such documents (and additional documents as may be relevant) pursuant to the Federal Rules of Civil Procedure; and (iii) to further issue subpoenas for deposition testimony related to such documents and the underlying circumstances described in this Application; AND

(D)     Ordering that Applicant shall serve a copy of such order on Respondents.

Dated:        Atlanta, Georgia
              June 18, 2020

Respectfully submitted,

By:   /s/ Edward W. Floyd
Edward W. Floyd
Luke F. Zadkovich
**Floyd Zadkovich (US) LLP**

ed.floyd@floydzad.com
luke.zadkovich@floydzad.com
Telephone: (917) 999 – 6914
215 Park Ave South, 11th Floor
New York, New York 10003

**PRO HAC VICE ATTORNEYS FOR
APPLICANT**  (to be filed)


/s/ Mathew G. Nasrallah
Mathew G. Nasrallah
Georgia Bar No. 535200
**Robertson, Bodoh & Nasrallah, LLP**
990 Cobb Parkway North
Suite 205A
Marietta, GA 30062
770-424-1234 (telephone)
770-424-2345 (facsimile)
nasrallah@rbnlaw.com

**LOCAL ATTORNEY FOR APPLICANT**